William J. Evans, ABA #9812092
Wendy E. Leukuma, ABA #0211048
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska 99501-5907
(907) 276-4557

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                    Plaintiff,<br><br>and<br><br>SHOTSAY POSCIRI,<br><br>                    Plaintiff-Intervenor,<br><br>vs.<br><br>UNITED FREIGHT AND TRANSPORT, INC.,<br><br>                    Defendant. | Case No. A05-0122 CV (JWS) |

### DEFENDANT'S OPPOSITION TO PLAINTIFF-INTERVENOR'S
### MOTION TO AMEND COMPLAINT

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

## TABLE OF CONTENTS FOR EXHIBITS

EXHIBIT A ............ Excerpts from the Deposition of William Smith (December 8, 2005)

EXHIBIT B ............ Excerpt from the Collective Bargaining Agreement between United Freight and Transport, Inc. and Teamsters Union Local No. 959 of the International Brotherhood of Teamsters

EXHIBIT C ............ Dispatch record dated September 19, 2003 (Ex. 15 to Michael Killian's Deposition (December 7, 2005)

EXHIBIT D ............ Excerpts from the Deposition of Michael Killian (December 7, 2005)

EXHIBIT E............. Excerpt from the Deposition of Janice Mansfield (December 8, 2005)

EXHIBIT F............. Deposition of Frank Monfrey (December 9, 2005)

EXHIBIT G ............ September 18, 2003 Dispatch Record (Ex. 3 to Mike Jones Deposition, December 7, 2005)

EXHIBIT H ............ September 26, 2003 Memorandum from Michael Killian (Ex. 5 to Mike Jones Deposition, December 7, 2005)

EXHIBIT I.............. October 2, 2003 letter to Frank Monfrey from Michael Jones (Ex. 7 to Mike Jones Deposition, December 7, 2005)

EXHIBIT J ............. October 6, 2003 letter to Michael Jones from Frank Monfrey (Ex. 9 to Michael Killian Deposition, December 7, 2005)

EXHIBIT K ............ October 16, 2003 Dispatch Record (Ex. 10 to Deposition of Michael Killian, December 7, 2005)

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 2 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

EXHIBIT L............. October 2, 2003 letter to Frank Monfrey from Michael Jones

(Ex. 36 to Deposition of Frank Monfrey, December 9, 2005)

EXHIBIT M ........... November 26, 2003 letter to Michael Jones from Frank

Monfrey and November 26, 2003 letter to Frank Monfrey

from Michael Jones (Ex. 37 to Deposition of Frank Monfrey,

December 9, 2005)

EXHIBIT N ............ EEOC Complaint

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 3 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

## I.    INTRODUCTION

Plaintiff, Shotsay Posciri, seeks to amend her Complaint to add a claim for retaliation.  Upon review, the "retaliation" Posciri claims to have suffered is nothing more than the defendant, United Freight and Transport, Inc.'s ("UF&T"), refusal to settle her grievance by hiring her -- instead of allowing the grievance process to proceed.   In support of her motion Posciri's counsel has provided a sworn affidavit indicating that UF&T's President, Frank Monfrey, stated in his deposition that "there was no way he was going to hire Shotsay Posciri after her grievance was filed."  The transcript of Monfrey's deposition reveals that no such statement was ever made by Monfrey.[1]

Because no previous description of the background facts of this case has been presented to the Court, UF&T has included a comprehensive background summary so that Posciri's retaliation claim can be analyzed and placed in its proper context.  The facts reveal no factual or legal support for Posciri's claim of retaliation.

## II.    BACKGROUND FACTS

UF&T operates a trucking company in Anchorage.  UF&T drivers pull trailers from the Port of Anchorage and deliver them to various businesses throughout the Anchorage area. (Smith Dep. pp. 113-14, attached as Ex. A)

**UF&T's Hiring Process**

The hiring of drivers by UF&T is governed by its Collective Bargaining Agreement ("CBA") with Local No. 959 of the International Brotherhood of Teamsters ("Teamsters" or "Union").  Article 5.01 requires UF&T to utilize the Union hiring hall to

---

[1] Ordinarily only applicable excerpts of deposition transcript would be included as Exhibits.  Due to the nature of the allegations, however, the complete transcript of Frank

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 4 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

obtain its drivers.  (CBA, Art. 5, attached as Ex. B).  Article 5.03 gives UF&T the right to reject any applicant referred by the Union.  (<u>Id</u>.) The right to reject applicants is limited by Article 5.02(a) and its prohibition on unlawful discrimination.  (<u>Id</u>.)

To obtain potential drivers, UF&T "opens a call" by notifying the Union dispatcher of the need for drivers.  UF&T has filed with the hiring hall a list of its requirements for potential applicants.  These requirements include:

> Class A CDL
>
> Hazardous Material Training as regulated by DOT
>
> ICC Medical Card
>
> Clean Driving Record
>
> Knowledge of Anchorage Port
>
> Knowledge of Anchorage Area
>
> Tractor Driving Experience
>
> Hostling Experience

(Dispatch Record, Killian Dep. Ex. 15, attached hereto as Ex. C)

Drivers interested in the position express their interest  to the dispatcher who screens the drivers for the required qualifications and then dispatches them to UF&T in order of Union seniority.[2]  (Killian Dep. pp. 16-17, 28-29, attached as Ex. D)  The hiring

_____

Monfrey's Deposition has been included so the Court can verify that the alleged comments never occurred.

[2] Union dispatcher Michael Killian testified that the hiring hall considers certain UF&T's "requirements" to be merely "preferences."  Accordingly, the hiring hall will still dispatch drivers who have no "knowledge of Anchorage Port" or no "hostling experience."  (Killian Dep. pp. 16-17, attached as Ex. D )  UF&T has at times hired drivers who lack these requirements/preferences when no better prospects were available (Mansfield Dep. p. 97, attached as Ex. E).

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-          *EEOC et al. v. United Freight &*
INTERVENOR'S MOTION TO AMEND COMPLAINT              *Transport, Inc.*
Page 5 of 21                                             Case No. A053-0122 CV (JWS)

hall dispatches drivers twice daily at 9:00 a.m. and at 3:00 p.m. (Killian Dep. p. 176, attached as Ex. D)

Once the driver arrives at UF&T the hiring process is two-fold – one part administrative and paperwork, and the other part an actual road test.  Applicants first provide basic background information which permits UF&T's office manager, Janice Mansfield,  to determine if the applicant is minimally qualified to take the "road test. (Mansfield Dep. pp. 14-15, attached as Ex. E)

 The road test is conducted by a UF&T driver and involves the applicant making an actual delivery.  (Smith Dep. pp. 50-51, attached as Ex. A)  In addition to the basic operation of the truck, the driver conducting the test observes the efficiency and demeanor of the applicant during the test. (Smith Dep. p. 55, attached as Ex. A)  One area that affects efficiency is the driver's knowledge of the Port of Anchorage.  (Smith Dep. pp. 58-59, attached as Ex. A)

The driving test is scored on a pass/fail basis.  After completing the test, the test paperwork is returned to Mansfield and she is advised whether or not the driver passed the test.  (Smith Dep. p. 72, attached as Ex. A)  Mansfield then decides, based on the number of available positions determined by UF&T President Frank Monfrey, whether to hire the applicant.  (Mansfield Dep. pp. 18-19, attached as Ex. E)  Because she is not a truck driver, herself, Mansfield relies heavily on the road test driver's assessment.  (Id.)

To get the best driver for their business, UF&T has historically requested more applicants from the hiring hall than it had positions to fill, thereby affording it the opportunity to compare drivers.  (Smith Dep. pp. 122-23, attached as Ex. A; Mansfield Dep. p. 17, attached as Ex. E)  In 2001, Michael Killian became the Union dispatcher. Killian believed UF&T's longstanding practice of requesting more applicants than they

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 6 of 21

*EEOC et al. v. United Freight &*
*Transport, Inc.*
Case No. A053-0122 CV (JWS)

had positions to fill circumvented hiring hall rules and reduced the importance of Union seniority.  (Killian Dep. pp. 139-141, attached as Ex. D)  Killian, thus, began to resist UF&T's efforts to compare drivers and would only send one driver at a time per open position. (<u>Id</u>.)

**The September 18, 2003 Call For Drivers**

In September 2003, UF&T was faced with uncertainty concerning the future of a number of its drivers.  Art Almon, was retiring at the end of the month.  (Mansfield Dep. p. 33, attached as Ex. E)  Bill Smith, had a serious heart condition and had a defibrillator implanted in his chest and it was unclear if he could maintain his Commercial Driver's License ("CDL").  (Smith Dep. pp. 18-19, attached as Ex. A; Mansfield Dep. p. 29, attached as Ex. E)  Tom Galloway advised UF&T that he was considering quitting and taking a job on the North Slope. (Mansfield Dep. p. 29, attached as Ex. E)  Finally, Eric Kjelland had been charged with Driving While Intoxicated (DWI) in his personal vehicle and UF&T was unsure if he would be insurable to operate a tractor-trailer.  (<u>Id</u>.)

Faced with the certain loss of one driver and the possible loss of three others, Monfrey was concerned about maintaining sufficient drivers during the busy run-up to Christmas.  (Monfrey Dep. pp. 38-41, attached as Ex. F)  Accordingly, on September 18, 2003, UF&T dispatcher, Dana Adams, requested applicants for two driving positions from the hall.  (Killian Dep. p. 36, attached as Ex. D).  Consistent with UF&T's practice, Adams requested five applicants for the two positions.  (<u>Id</u>.)  Killian stated he would only send two applicants at a time.  (<u>Id</u>.)

At the 9:00 a.m. call, Killian sent Daniel Gross and Roy Buckalew.  (Killian Dep. p. 37, attached as Ex. D; Jones Dep. Ex. 3, attached as Ex. G)  Both Gross and Buckalew were rejected by UF&T.  (Killian Dep. pp. 37-38, attached as Ex. D)  Gross did not

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

possess the required hazardous materials endorsement and Buckalew failed his road test. (<u>Id</u>.)

The next morning, Friday September 19, having learned that Gross was rejected, Killian dispatched Gary Dixon. (Killian Dep. p. 38, attached as Ex. D)  Killian then called Adams to tell him he had sent over another applicant. (Jones Dep. Ex. 5, attached as Ex. H)  Adams informed Killian that Buckalew failed his road test. (<u>Id</u>.)  Killian said that he would send another driver at the 3:00 p.m. call and have him report first thing Monday morning. (Killian Dep. p. 194, attached as Ex. D; Jones Dep. Ex. 5, attached as Ex. H)  Adams reiterated that his boss believed it important that more than one driver per position be sent. (Killian Dep. p. 39, attached as Ex. D)

That same day, Dixon after passing his road test ran into Monfrey at UF&T's offices. (Monfrey Dep. pp. 35-36, attached as Exhibit F)  Monfrey was familiar with Dixon from Fairbanks and had a favorable impression of him. (<u>Id</u>.)  When Mansfield advised him that Dixon passed his road test,  Monfrey indicated that he should be hired (<u>Id</u>.)  At the 3:00 p.m. call, Killian dispatched the plaintiff in this case, Shotsay Posciri, (nee Breaux) to report to UF&T on Monday morning September 22.

On September 22, Killian phoned Monfrey to address his concerns about requesting more applicants than open positions. (Killian Dep. pp. 41-42, attached as Ex. D)  Monfrey then asked how many positions Adams indicated were open, and was told "two." (Jones Dep. Ex. 5, attached as Ex. H)  Monfrey then advised Killian to raise the number to three. (Killian Dep. pp. 41-42, attached as Ex. D; Jones Dep. Ex. 5, attached as Ex. H)  Despite indicating there were three positions, UF&T did not know for sure how many positions it would be filling. (Mansfield Dep. p. 31, attached as Ex. E)

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 8 of 21

*EEOC et al. v. United Freight & Transport, Inc.*
Case No. A053-0122 CV (JWS)

Having been told there were three positions, Killian sent Dan Tullis to UF&T. (Killian Dep. p. 42, attached as Ex. D)  Killian then called UF&T to check on the status of Dixon and Posciri.  (Id.)  He was told that Dixon would be hired and the process for Posciri had not been completed.  (Id.)

Posciri was given a road test by UF&T driver Bill Smith.  (Smith Dep. pp. 76-81, attached as Ex. A)  Her road test involved driving to the Port of Anchorage, picking up a loaded trailer and delivering it to K&L Distributors.  (Smith Dep. p. 71, attached as Ex. A)  Having no Port of Anchorage experience, Posciri asked Smith for directions to the Port.  (Smith Dep. pp. 77-78 , attached as Ex. A)  According to Smith, Posciri completed her road test satisfactorily.  (Smith Dep. p. 75, attached as Ex. A)

Smith then advised Mansfield that Posciri passed her road test and would be acceptable to be hired.  (Smith Dep. pp. 75, 82, attached as Ex. A)  Smith was then informed he had to conduct a road test for Dan Tullis.  (Smith Dep. p. 76, attached as Ex. A)  The road test given Tullis was identical to Posciri's, both delivered to K&L Distributors.  (Smith Dep. p. 77, attached as Ex. A)

Smith returned to the UF&T office and was asked by Mansfield which driver he preferred between Posciri and Tullis.  (Smith Dep. pp. 73-74, attached as Ex. A)  Smith indicated he preferred Tullis because he was faster and more comfortable in his driving and he had experience working in the Port of Anchorage.  (Smith Dep. pp. 73-74, 93 attached as Ex. A; Mansfield Dep. p. 35, attached as Ex. E)  Smith felt that Posciri's more tentative driving caused her to be stopped more frequently by synchronized traffic lights which was detrimental to efficiency.  (Smith Dep. pp. 81-82, attached as Ex. A)  Mansfield also believed Tullis' background was better suited to UF&T's work because of

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 9 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

his former employment by Weaver Brothers, a direct competitor of UF&T.  (Mansfield Dep. p. 46, attached as Ex. E)

Mansfield advised Monfrey of the situation and told him that if they were going to hire one driver she chose Tullis.  (Mansfield Dep. pp. 39-40, attached as Ex. E; Monfrey Dep. p. 44, attached as Ex. F)  Monfrey, who had been unsuccessfully trying to get clarification on the status Smith and Kjelland, advised Mansfield that he couldn't hire either of them at the moment and directed the call to be closed. (Monfrey Dep. p. 41, attached as Ex. F)

The next day, Mansfield called both Tullis and Posciri and advised them that they were not being hired at that time.  (Mansfield Dep. pp. 40-41, attached as Ex. E)  Killian contacted UF&T and was told they were not going to hire Posciri but they might hire Tullis but they won't know for sure for a couple of weeks.  (Killian Dep. pp. 196-97, attached as Ex. D; Jones Dep. Ex. 5, attached as Ex. H)  UF&T wanted to keep the opportunity to hire Tullis alive because of his previous work for Weaver Brothers. (Mansfield Dep. pp. 46-47, attached as Ex. E)   Not having worked for a competitor of UF&T's, Posciri was still eligible for hire by UF&T but would have had to respond to a future call.  (Mansfield Dep. p. 48, attached as Ex. E)

### The Union Files Its First Grievance

On October 2, the Union filed a Step 1 grievance regarding UF&T's decision not to hire Posciri.  (Jones Dep. Ex. 7, attached as Ex. I)  The grievance claimed violation of Article 5.01 and 5.02 of the CBA.  Id.  The grievance also included the assertion that "the Company has a history of not hiring female drivers."  Id. This was supplied by Killian who, strangely, after reviewing the dispatch records and discovering that three women that had been dispatched to UF&T – and that the company hired all three – concluded

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 10 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

that UF&T was reluctant to hire female drivers.  (Killian Dep. pp. 152-53, attached as Ex. D).  On October 6, Monfrey responded to the step 1 grievance by disagreeing with the Union's allegations.  (Killian Dep. Ex. 9, attached as Ex. J)

### October Hiring By UF&T

By mid-October, the uncertainties regarding UF&T's drivers diminished.  Neither Smith nor Kjelland could remain with UF&T.   UF&T contacted the Union and asked if they could still hire Tullis.  The Union agreed, and Tullis was hired. (Monfrey Dep. pp. 63-64, attached as Ex. F)  Needing at least one more driver, UF&T opened a call for drivers on October 16.  UF&T advised the Hiring Hall that there were three positions open. (Killian Dep. pp. 174-181, attached as Ex. D; Killian Dep. Ex. 10, attached as Ex. K).  Posciri did not respond to this call and was, thus,  not compared to the drivers who responded.  (Mansfield Dep. pp. 98, 101, attached as Ex. E)   From this call, after reviewing several drivers, UF&T hired Craig Merck.[3]

### The Union Files its Second Grievance

On October 31, the Union filed what it purported to be a Step 2 grievance entitled "Grievance Against Hiring Practices."  (Monfrey Dep. Ex. 36, attached as Ex. L)  The Union claimed that UF&T violated Article 5 of the CBA when it hired Tullis after closing the September call.   (Id.)

On November 14, Mike Jones, the Union business agent, and Killian met with Monfrey regarding the grievance and a possible settlement.  During the meeting, the Union proposed a four-step settlement of the grievance:

---

[3] Merck only lasted several days with UF&T before being terminated.  Once he was terminated, UF&T asked if it could hire its second choice from the October 16 call, Perry Lemons.  The Union agreed and Lemons was hired in early November 2003.

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 11 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

1.    Compensating Porsciri for all wages and benefits paid to Dan Tullis since his date of hire.

2.    Post seniority position of Posciri ahead of Mr. Tullis.

3.    Waive the probationary period for Ms. Posciri.

4.    Afford any employee laid off due to Ms. Posciri's hire credit toward probation if rehired.

(Id.)  UF&T rejected these conditions UF&T.  (Mansfield Dep. p. 97, attached as Ex. E)

During the meeting, Killian complained about UF&T's practices in using the Hiring Hall and they, according to Monfrey put "political pressure" on him to settle the grievance:

> Essentially, they said that Ms. Shotsay was a friend of Mr. Kenny's newly elected secretary/treasurer, that they needed me very badly to bring her on and they gave me a letter that said we want you to do this and you're going to do it and here's how you're going to do it.  You're going to give her her job back, her seniority ahead of Mr. Tullis, you're going to give her backpay and she'll be here with no probation.  I said absolutely not.  And I refused to do it.

(Monfrey Dep. pp. 6- 7, attached as Ex. F)

On November 18, Monfrey was provided with a written copy of the Union's settlement proposal.  (Monfrey Dep. Ex. 36, attached as Ex. L)  Monfrey rejected the proposal and again denied that UF&T discriminated against Posciri.  (Monfrey Dep. Ex. 37, attached as Ex. M)

The grievance process proceeded and on February 11, 2004 a Step 3 panel was convened to hear the grievance.  (Monfrey Dep. pp. 118-120, attached as Ex. F)  The panel determined unanimously that the grievance did not have merit.  (Monfrey Dep. pp. 119-20, attached as Ex. F)  Neither the Union nor Posciri pursued the grievance to the next step of binding arbitration.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

On, July 6, 2004, Posciri filed a charge with the EEOC alleging sex discrimination. (EEOC Complaint, attached as Ex. N) On June 1, 2005, the EEOC commenced this action alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964. On November 1, 2005, Posciri filed a Complaint in intervention alleging state law sex discrimination as well.

## III. ARGUMENT

Posciri seeks to amend her complaint to add a claim for "retaliatory conduct prohibited by both the federal and state anti-discrimination laws." (First Amended Complaint in Intervention, ¶ 19) This amendment is purported to be necessary to "conform to the evidence." (Mem. Supp. Mot. Leave to Amnd Compl. p. 2). According to Posciri, during the deposition of Frank Monfrey, President of UF&T, Monfrey stated "there was no way he was going to hire Shotsay Posciri after her grievance was filed." (Aff. of Ken Legacki in Supp. Mot. for Leave to Amnd Compl., ¶ 2) Posciri's Motion to Amend Complaint should be denied for several reasons.

### A. Standard of Review

Posciri cites – and bases her motion on – the wrong standard, i.e., the liberal amendment policy set forth in Fed. R. Civ. P. 15(a). (Mot. for Leave to Amnd Compl., p. 2) Rule 15(a), however, simply does not apply.

"Rule 15 does not provide the standards …[o]nce the district court ha[s] filed a pretrial scheduling order …which establishe[s] a timetable for amending pleadings." Johnson v. Mammoth Recreations, Inc., 975 f.2d 604, 607-08 (9th Cir. 1992) (affirming district court denial of motion for leave to amend). Once a deadline for filing amended pleadings is ordered by the Court, a party's "ability to amend [its] complaint [is] governed by Rule 16(b), not Rule 15(a)." Id. at 608. Under Rule 16(b), the deadline

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 13 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

"shall not be modified except upon a showing of good cause and by leave of the district judge[.]" Fed R. Civ. P. 16(b). "A court's evaluation of good cause is *not* coextensive with an inquiry into the propriety of the amendment under… Fed R. Civ. P. 15.   Unlike Rule 15(a)'s liberal amendment policy  which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." Johnson, 975 F.2d at 609. (citation omitted) (emphasis added)  The Ninth Circuit has emphasized that "Federal Rule of Civil Procedure 16 is to be taken seriously and …attempts to amend complaints, which would require an amendment of the scheduling order, *must* be based upon good cause." Janicki Logging Co. v. Mateer, 42 F.3rd 561, 566 (9th Cir. 1994 (emphasis added) (affirming district court denial of motion for leave to amend.)

This Court issued a scheduling order on August 26, 2005 which provided a deadline for amendments to the pleadings of October 25, 2005.  Accordingly, since Posciri's motion falls outside the Court's established deadline, it must be considered under Fed Civ. Pro. R. 16.  While the standard of Rule 16 should govern the review of Posciri's motion, even under the more liberal Rule 15 Posciri's motion should be denied.

**B.     Posciri's Claim for Retaliation Should Be Denied on Grounds of Futility**

Regardless of the standard applied (whether the "good cause" standard of Rule 16(b) or the more permissive standard of Rule 15 (a) a court may always deny a motion to amend a complaint if the proposed amendment would be futile.  Foman v. Davis, 371 U.S. 178, 182 (1962).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 14 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

1.    **Posciri Cannot Maintain A Claim for Retaliation Under Either Federal or Alaska Law**

While Posciri's Motion for Leave to Amend does not specify the precise legal basis of her retaliation claim, only four realistic possibilities exist,  none of which are tenable.[4]

Under Alaska law retaliatory conduct is prohibited by the Alaska Human Rights Act -- AS 18.80.220(a)(4) -- and is also an independently recognized tort.  See Reust v. Alaska Petroleum  Contractors, Inc., 2005 WL 2812745 (Oct. 28, 2005) (Alaska); Kinzel v. Discovery Drilling, Inc., 93 P.3rd 427 (Alaska, 2004).  Under both statutes a *prima facie* case is the same:

> To establish a prima facie case of retaliation, a plaintiff must show: (1) that the employee was engaged in a protected activity; (2) that an adverse employment decision was made; and (3) that there was a causal connection between the two.

Kinzel, 93 P.3rd at 433.  See also Raad v. Alaska State Commission for Human Rights, 86 P.3rd 899, 905 (Alaska 2004) (establish same prima facie case under Alaska Human Rights Act retaliation claim).

Retaliation is also prohibited under Title VII of the Civil Rights Act of 1964.  42 U.S.C. §2000e et seq.  The *prima facie* standard for Title VII retaliation is identical to the Alaska standard in that it requires a protected activity, an adverse employment action and a causal link between the two.  Porter v. California Department of Corrections, 419 F.3rd

---

[4] The fourth possibility for a retaliation claim would be under Alaska's Whistleblower Act.  AS 39.90.100(a).  This, however, would also be futile as claims under the Whistleblower act require Posciri to have made a "report to a public body" or to have been "about to report to a public body on a matter of public concern…AS 39.90.100(a)(1).  The Union's grievance would not constitute a report to a public body.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 15 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

885, 894 (9th Cir. 2005);  Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 965 (9th Cir. 2004).

Accordingly, Posciri can only establish a claim for retaliation if she can show that her purported protected activity (*i.e.* the Union's filing a grievance) led to an adverse employment action.  This Posciri cannot do.  She claims that "the defendant company refused to hire her specifically because she filed the discrimination grievance against the company."  (First Amnd. Compl in Intervention, ¶ 19)

Posciri applied for a job with UF&T only once – on September 22, 2003.  At that time, UF&T declined to hire her.  This refusal by UF&T to hire Posciri on September 22 is the basis for her grievance which is filed on October 2.   Therefore, as a simple matter of logic, the September 22 refusal to hire is not caused by the grievance as it predates it.  Any adverse action taken by UF&T must occur after October 2 in order to be causally linked to the filing of the Union's grievance.   At no point after October 2, did Posciri ever apply for a position with UF&T.

What Posciri is, in fact, alleging is that UF&T engaged in retaliatory conduct by failing to settle her grievance by hiring her instead of the hires it made in October 2003.

It is undisputed when UF&T decided that it would not hire Posciri on September 22, it also advised the Union that it was still considering hiring Tullis.  (Killian Dep. pp. 196-97, attached as Ex. D; Jones Dep. Ex. 5, attached as Ex. H).  Accordingly, UF&T's preference for Tullis over Posciri was formed before the filing of the Union's grievance.  Therefore, UF&T's hiring of Tullis on October 16, instead of Posciri cannot be causally linked to the filing of the Union's grievance.

Similarly, the opening of a new call in October and the hiring of Craig Merck and subsequently Perry Lemons cannot be viewed as an adverse action against Posciri.  On

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 16 of 21

*EEOC et al. v. United Freight &*
*Transport, Inc.*
Case No. A053-0122 CV (JWS)

October 16, when the call was opened for new drivers, Posciri had a pending grievance against UF&T regarding their refusal to hire her in September.  (Grievance, Killian Dep. 7, attached as Ex. I).  UF&T had responded to the grievance denying that it had discriminated or violated the CBA in any manner.  (Killian Dep. Ex. 9, attached as Ex. J) Posciri's underlying rationale that UF&T should have hired her in order to "remedy" her pending grievance instead of opening a call is evident in the questioning of Monfrey. (Monfrey Dep. pp. 85-89, attached as Ex. F)  Contrary to the assertions made by Posciri, Monfrey clearly indicated that Posciri could have been considered for hire in October, but she did not show up for the call.  (Monfrey Dep. p. 85, attached as Ex. F)[5]

The sole support for Posciri's Motion is the affidavit provided by Posciri's attorney, Ken Legacki.  In this affidavit, Legacki swears that during his deposition:

> Monfrey stated that the reason for not hiring Shotsay Posciri was because the Union was trying to extort a compromise.

(Aff. Ken Legacki in Supp. Mot. Leave to Amnd Compl., ¶ 2)  And more remarkably, that:

> Mr. Monfrey has admitted that because Shotsay Posciri filed a discrimination complaint, Defendant United Freight would never hire her even though she is qualified to be a driver for the company

(Aff. Ken Legacki in Supp. Mot. Leave to Amnd Compl., ¶ 4)

Neither of these statements reported by Legacki were made by Monfrey.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

---

[5] Interestingly, Killian testified that he believed that Posciri may not have presented herself for the October call because she was working for AIC at the time.  (Killian Dep. p. 180, attached as Ex. D)

Monfrey did mention that the Union applied "political pressure" for him to hire Posciri.[6] (Monfrey Dep. pp. 6-8, attached as Ex. F)  He stated that in his November 14 meeting with Mike Jones and Mike Killian and was told:

> Essentially, they said that Ms. Shotsay was a friend of Mr. Kenny's newly elected secretary/treasurer, that they needed me very badly to bring her on and they gave me a letter that said we want you to do this and you're going to do it and here's how you're going to do it.  You're going to give her her job back, her seniority ahead of Mr. Tullis, you're going to give her backpay and she'll be here with no probation.  I said absolutely not.  And I refused to do it.

(Monfrey Dep. pp. 6-7, attached as Ex. F)[7]

Moreover, Monfrey indicated that the "tone" used by the Union officials in his meeting on November 14 did affect his willingness *to settle the grievance*, but that regardless of the tone he would never have settled on the terms proposed by the Union:

> Q.    "I was under the impression that he was strongly considering settling."  Were you considering settling?
>
> A.    Absolutely not.
>
> Q.    Why is that?
>
> A.    Because of the manner in which it was presented to me.

---

[6] Strangely, Posciri's Memorandum in Support of her Motion for Leave, suggests that Monfrey is being dishonest about the political pressure he claims that was applied to him on November 14.  (Mem. Supp. Mot. Leave Amnd. Compl., p. 2)  Indeed, Posciri describes the political pressure as "extortion" a term that is not referenced anywhere in Monfrey's deposition.  (Id.)  Once she has asserted that Monfrey is not being honest about the "extortion," Posciri jumps to the unique theory that Monfey must, therefore, have been refusing to settle the grievance in retaliation for the filing of the grievance.  (Id.)  Indeed, if Posciri were to prevail on this theory every refusal to settle a lawsuit or complaint would spawn a separate retaliation claim.

[7] The terms of the Union's proposed settlement as recalled by Monfrey are verified by the Union's subsequent letter of November 18, outlining the same proposed terms.  (Monfrey Dep. Ex. 36, attached as Ex. L)

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 18 of 21

*EEOC et al. v. United Freight &
Transport, Inc.*
Case No. A053-0122 CV (JWS)

Q.    What do you mean?

A.    Well, we discussed earlier, the manner in which it was presented to me was not in a – it was more of a "you're going to do this" manner.  Is that clear?

Q.    You mean they were trying to strong arm you?

A.    Exactly.  But I didn't use that word.  It was "you need to do this."  You're going to do this, and this is how we're going to do this.  I never strongly – to say I strongly was considering it was never an option.

Q.    Well, if they didn't try to strong arm you, would you consider it – settling this grievance?

A.    It would have had a different tone.  I can't answer that for sure.  It was a long time ago – but not under these terms.

Q.    What do you mean the terms?

A.    The terms that were presented to me that day.

(Monfrey Dep. pp. 75-76, attached as Ex. F)

There is no legal or factual support for a claim of retaliation by Posciri.  There is no evidence that her filing of a grievance resulted in any adverse employment action.  Accordingly, her Motion for Leave to Amend should be denied as it would be futile to pursue.

## 2.    Posciri's Retaliation Claim is Barred by Applicable Statutes of Limitation

In addition to being legally deficient, Posciri's retaliation claim is also time barred by both federal and state statutes of limitation.

Although Posciri does not identify with any specificity the adverse employment action she suffered as a result of the filing of the Union's grievance, it appears that she refers to UF&T's failure to hire her in October or early November of 2003.  A claim of

retaliatory conduct under the The Alaska Human Rights Act ("AHRA"), AS 18.80.220 et

seq. would be subject to the Act's two year statute of limitation.  Russell v. Municipality

of Anchorage, 743 P.2d 372 (Alaska 1987).  Similarly, a claim for the tort of retaliation

would similarly be subject to Alaska's two year statute of limitations on torts.  AS

09.10.070.[8]  Accordingly, under applicable Alaska law, Posciri's claim for retaliation

would be time barred.

A claim of retaliation under Title VII would also be time barred.  Title VII

requires all charges to be filed with the EEOC within 180 days.  42. U.S.C. §2000e-

5(e)(1).  Because Alaska is a "deferral" state, a complaint has up to 300 days to bring a

claim under Title VII to the EEOC or state administrative agency for review.  Id.

Because the adverse employment action Posciri alleges occurred in October or November

of 2003, the 300 day time period for bringing a charge to the EEOC regarding a violation

of Title VII has long since passed.  Posciri has made no effort to obtain a verification of

her charge pursuant to 29 C.F.R. § 1601.12(b).  Accordingly, Posciri has failed to exhaust

her administrative remedies by filing a timely claim for retaliation with the EEOC.

## IV.    CONCLUSION

Posciri's Motion for Leave to Amend Complaint to allege a new claim for

retaliation should be denied.  The stated motivation for Posciri's belated filing are

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK  99501
(907) 276-4557

---

[8] Alaska also  recognizes a retaliation claim under a contractual theory which would
arguably provide a three year statute of limitations period.  There is, however, no
indication in Posciri's pleadings that such a claim is alleged or would be applicable.
Moreover, such a claim would not afford Posciri the exemplary damages she seeks in her
retaliation claim.

DEFENDANT'S OPPOSITION TO PLAINTIFF-           *EEOC et al. v. United Freight &*
INTERVENOR'S MOTION TO AMEND COMPLAINT              *Transport, Inc.*
Page 20 of 21                                  Case No. A053-0122 CV (JWS)

statements allegedly made by Frank Monfrey during his depositions.  The statements

attributed to Monfrey did not occur and, therefore, there is no basis for the belated

amendment of Posciri's Complaint.  In addition, the facts of this case reveal that Posciri

cannot assert a *prima facie* case of retaliation because she cannot causally link any

adverse employment action to the Union's filing of a grievance.   For these reasons, the

Defendant respectfully requests the Court deny Plaintiff's Motion and grant to Defendant

the Costs reasonably incurred in having to Oppose Plaintiff's baseless motion.

Respectfully submitted.

DATED this 20th day of January, 2006, at Anchorage, Alaska.

DORSEY & WHITNEY LLP
Attorneys for Defendant

By: s/William J. Evans _____
       William J. Evans, ABA #9812092
       Wendy E. Leukuma, ABA #0211048

CERTIFICATE OF SERVICE

This certifies that on this 20th day of January, 2006, a
true and correct copy of the foregoing document was
served electronically on the following:

Teri Healy
Equal Employment Opportunity Commission
Seattle District Office
909 1st Avenue, Suite 400
Seattle, Washington 98104
Email: teri.healy@eeoc.gov

Kenneth W. Legacki
425 G Street, Suite 920
Anchorage, Alaska 99501
Email: legacki@gci.net

by electronic means through the ECF system
as indicated on the Notice of Electronic Filing,
of if not confirmed by ECF, by first class regular mail.

s/William J. Evans _____
Certification signature

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

DEFENDANT'S OPPOSITION TO PLAINTIFF-
INTERVENOR'S MOTION TO AMEND COMPLAINT
Page 21 of 21
4833-5865-7536\1\477319\00001

*EEOC et al. v. United Freight &*
*Transport, Inc.*
Case No. A053-0122 CV (JWS)