# EXHIBIT 3

December 10, 2003

TO: Mike Jones, Business Representative

FROM: Michael Killian, Dispatcher

RE: Frank Monfrey's Letter of November 26, 2003

Thank you for sending a copy of the above mentioned letter to my office for review. After reading the document I am somewhat disappointed with Mr. Monfrey's response. In fact several of the statements Mr. Monfrey makes within the letter raises great concern to me as Local 959's dispatcher. As you are aware I attended one of the meetings at United Freight with you in an attempt to find resolution to dispatch inconsistencies that have been prevalent with that employer. During the meeting we also shared idea's in how to put the Shotsay Breaux grievance to rest. That meeting took place on November 14, 2003 and was mentioned in his correspondence, first paragraph.

In an effort to assist you in making a decision on how far to advance the Shotsay Breaux grievance, I am sending you the following comments, these remarks are reflecting my involvement and perspective regarding the hire hall turmoil with UFAT and the Breaux grievance. I will comment one paragraph at a time reflecting directly to Frank's letter and paragraphs. Attached will be his letter with the paragraphs number respectively.

PARA # 1   Frank did not tell us he would not accept the proposal. Frank did not make any statements regarding the validity of the grievance.

I engaged in the discussion encouraging settlement, further, I was under the impression that he was strongly considering settling however, under lesser terms. Frank told us he would wait for our written proposal (you intended to personally deliver it that day) and would respond back to us the following Monday. Frank expressed a personal concern in that he would have to retract his current position on the grievance and announce it among his employees, stating that in his position as President, running the company that, "would not be an easy thing to do".

PARA #2   Originally Dana Adams called asking for five drivers to be interviewed for two open positions. I explained to Dana if two positions were vacant I would only send two until I heard back from the company on each. At that time if it were decided to only hire one of two, or if either of two were not hired, I would then send additional drivers to apply. Shotsay Breaux was dispatched on the 19th at 3:00 p.m. for a Monday interview. On Monday Dana once again ask for more drivers. At that time I ask him to put me in touch with Frank Monfrey. Frank was on another line but I did call him mid day. After a long conversation about each others concerns he ask me how many drivers did Dana tell me they were hiring. I told him two, he then informed me they were intending to hire three. At no point did I send more drivers than there were vacancies.

**UFT-01440**

EXHIBIT 3 - Page 1 of 3

Page 2.

PARA #3   In this paragraph Frank conveys yet another version of what I heard about shotsay's drive test. Initially I was told she did not pass the test. That statement was withdrawn and the issue of lacking knowledge of the port area became the concern. Finally I was told that the company decided to only hire one driver and they intended to make the offer to Gary Dixon Jr.

I believe in a drive test situation many assumptions could be made, however considering the vast amount of hours shotsay has in her driving career, another assumption could be that the impression of slow driving during a prospective new employment "driving test" demonstrates a "safe approach" to unfamiliar equipment. How about that !!

Frank comments about a previous co-worker of Shotsay's making an observation as well regarding the slow driving, was this individual riding shotgun ? Who was this person ? This is also the first time I've heard the comment.

Frank contends in this paragraph that originally he intended to hire two drivers......Please recall my telephone conversation with him (para two).

I am extremely concerned over the last sentence. An obvious mis-interpretation. If the union fails to send qualified workers the company has a situation to make that determination whether to hire or not. It would not make sense to negotiate hire hall language for membership employment opportunity and then give full authority to the company to refuse each and every member we send over. This instance of Shotsay Breaux is a fine example, I believe we have a duty to pursue such cases.

PARA #4   I will do some home work researching the dispatch history and hours worked in relation to male drivers verses female drivers.

<u>It may be true that the instance with the first grievance was closed, however when Dan Tullis was called a new circumstance arose. A new grievance was then filed and a step two situation with the first grievance was not attempted.</u>

PARA #5   On September 25, 2003 I called Frank Monfrey to discuss the status of the dispatches. Frank informed me that they had hired Gary Dixon Jr. They will not be hiring Shotsay Breaux, and that the probability of hiring Dan Tullis was high however they would not make a final decision for at least a couple of days or up to two weeks.

When Dana called I passed that on to him and informed him that I had not been instructed to close the job call anyway. Please keep that in mind Frank, Dana, or any one had closed the job call and only in the letter to you on October 06, 2003 did any such directive be given to the union. Also please recall that Frank did close the call and was damn well aware of it. Next para important to refer to that.

Page 3.

PARA # 6     This paragraph restates many things. It does contain a sentence admitting that Dan was hired after the call was closed, Frank being the individual who closed the call in a letter to you.

The Breaux grievance at one point was closed and that tends to confuse Frank Monfrey. <u>Only by hiring Dan Tullis in the manner they did, resurrected the matter.</u> Hire Hall issues where still being discussed.

There was never a "unique circumstance" evolving around Dan Tullis and his being hired out of the hire hall. Mike Jones and I never agreed to allow Dan Tullis to be hired without an open call.

PARA #7     It is my impression that I had resolved our concerns regarding the hire hall procedures during our November 14, 2003 meeting. I had intended to reduce the procedure to writing by now but I have not. I will.

United Freight, in the past, has been very obstructive when I have tried to follow up on my obligations as dispatcher. I have had very difficult job call issues since the beginning of by assignment in dispatch. Your comment to Frank Monfrey of "having a pattern of abnormal hiring hall practices" is an understatement. I've kept records and would be willing to use them as examples as we go forward.

PARA #8     Please refer to para # 4 above, I will provide the information for a comparison. This is not a "sexual" discrimination case as Frank wrote, it is a discrimination of not hiring female drivers.

PARA #9     Yes we do have basis and unless we are otherwise instructed to do so we should go forward and fight this.

UFT-01442

EXHIBIT 3 - Page 3 of 3